GEORGE S. COE and others, trustees, &c.,

*v.*

THE NEW JERSEY MIDLAND RAILWAY COMPANY.

A switch was built by the Midland Railway Company for the joint convenience and use of a mining company and the Midland Railway Company, under an agreement which expressly excepted a certain part from the use of the mining company. The assigns of the mining company claim the right to use such excepted part. *Held* (1), that a mere use by the permission of the Midland Railroad Company conferred no right. (2.) Nor is such switch "a public highway," within the meaning of the charter of the Midland Railway Company. (3.) Nor does the fact that the Midland Railway Company built such switch without legislative authority, give the assigns a right to use it.

Bill to foreclose. Petition of receivers for relief against use of track by Sussex Railroad Company. On petition, answer and affidavits.

*Mr. B. Williamson,* for the receivers.

*Mr. Joseph Coult* and *Mr. J. G. Shipman,* for the respondents.

THE CHANCELLOR.

The New Jersey Midland Railway Company, in or about the fall of 1871, constructed a short railroad from a switch on the land of the Boston Franklinite Company, to what was then known as the dump of the New Jersey Zinc Company. The road was constructed under an agreement between the Railway Company and the Franklinite Company, dated October 17th, 1871, by which the former agreed to construct the railroad and give the mining company the right to use it (excepting a small part) for the purpose of loading and transporting ore and other material; and the mining company granted to the railway company the right of way for the track, and also the right of trackage or passage over the before mentioned switch, from the point of junction of the track therewith to the railroad of the Sussex Railroad Company, over which, at that place, the railway company had the right of passage. The part of the track reserved by the above mentioned exception was that part which lies between station 12 thereon and the northerly terminus of the track.

The respondents claim to have succeeded to the rights of the mining company in the premises, and to have the right to use not only that part of the track which the latter was, by the agreement, authorized to use, but also the excepted portion. They claim this right, not by virtue of any new agreement between the mining company, or its representatives or assigns, and the railway company, or the petitioners, but by virtue of an alleged user by the mining company, and by themselves since they succeeded to the right of that company, of the excepted portion at pleasure, from time to time. They also claim it under their construction of an agreement made between the railway company and them in 1870, by which the former granted to them, in consideration of certain compensation, the perpetual right to transport freight in their own cars over "those portions of the Midland track extending from the station at Franklin ten

Coe *v.* N. J. Midland Railway Co.

miles northerly and six miles southerly." They further insist, that by the charter of the railway company (*P. L.* 1832, p. 133), the road of the latter is declared to be a public highway, and they also defend their use of the track on the ground that the railway company had no legislative authority to construct or maintain it. The agreement between the railway company and the mining company is explicit in its terms, and the reservation and exception of the portion of the track in question are unequivocally declared; so far as the respondents' defence rests on their claims under the mining company, it cannot be maintained, for the manifest reason that the exception is as binding on the representatives or assigns of that company as it was on them. The alleged user cannot prevail against the exceptions of the agreement. Nor could the fact that the railway company, in order to pass from the track in question to the before mentioned switch (the right to pass over which is granted to them by the agreement), were, and that the petitioners are, under the necessity of backing their trains upon a part of the switch not included within the terms of the agreement, constitute any warrant, as the respondents insist that it does, for disregarding the exception. The right so to use that part of the switch would, it may be remarked, for aught that appears, be held to pass by necessary implication. The agreement between the railway company and the respondents, under which, as before stated, the latter obtained the right to use the track of the former for a certain distance each way from Franklin station, was made more than a year before the agreement between the railway company and the mining company. The track in question had not then been constructed, and it does not appear to have been even in contemplation. Nor do the terms of the agreement with the respondents embrace this track. It is no part of the main track of the Midland road, nor can it, by any just construction, be held to be embraced within that agreement. It is not a switch or turnout, intended to promote the safe or

convenient use of the track of the road, but it was designed and used merely as a special auxiliary to the business of the company, to enable them to bring to their road, for transportation thereon, the freight of the particular customer or customers up to or in the vicinity of whose premises it was constructed, and for which purpose only it was of value or available to them. The use of it no more passed under the agreement with the respondents than would the use of a track which the railway company might have constructed to their own gravel pit, or to a coal-yard or warehouse. This view disposes, also, of the claim to the right to use the track as a public highway. It is no part of the road within the meaning of the section of the charter which provides that the road or roads of the company shall be public highways. As to the claim to the right to use the track on the ground that the railway company had no authority to construct it, it is enough to say that if the want of authority were conceded, that would not give the respondents any right to the use of the track. The respondents will be enjoined from using the part of the track between station 12 and the northerly terminus.